IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JILL E. MANCINI, | : | |
| | : | CIVIL ACTION NO. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORTHAMPTON COUNTY; JOHN BROWN, | : | JURY TRIAL DEMANDED |
| in his individual and official capacity; and | : | |
| VICTOR SCOMILLIO, in his individual and | : | |
| official capacity | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

AND NOW comes Plaintiff, Jill E. Mancini, by and through her counsel, Gross McGinley, LLP, and states her complaint based upon the following causes of action:

**I.  INTRODUCTION**

1. Plaintiff Jill E. Mancini initiates this action, pursuant to 42 U.S.C. § 1983, against her former employer, Defendant Northampton County (hereinafter "Defendant County"), Defendant John Brown (hereinafter "Defendant Brown"), in his individual and official capacity, and Defendant Victor Scomillio (hereinafter "Defendant Scomillio"), in his individual and official capacity, in order to seek redress for violations of three distinct federal constitutional rights flowing from the termination of her position as a full-time Assistant County Solicitor for Northampton County. Those three federal constitutional rights are found in the First Amendment, the Fourteenth Amendment in the form of procedural due process, and the Fourteenth Amendment in the form of equal protection. In terms of remedy, Plaintiff requests compensatory damages against Defendant County, Defendant Brown in his official capacity, and Defendant Scomillio in his official capacity and compensatory and punitive damages against

Defendant Brown in his individual capacity and Defendant Scomillio in his individual capacity. Plaintiff also seeks pre and post-judgment interest, costs of suit, and attorney's fees.

## II. THE PARTIES

2. Plaintiff Jill E. Mancini ("Plaintiff") is an adult individual residing at 526 6th Avenue, Bethlehem, Pennsylvania, 18018.

3. Defendant County is a municipality and/or political subdivision of the Commonwealth of Pennsylvania governed under the provisions of a Home Rule Charter.

4. Defendant John Brown is the current County Executive of Northampton County and maintains a principal place of business at 669 Washington Street, Easton, Pennsylvania 18042.

5. Defendant Victor Scomillio is the current Solicitor of Northampton County and maintains a principal place of business at 669 Washington Street, Easton, Pennsylvania 18042.

## III. JURISDICTION AND VENUE

6. The allegations in paragraphs 1 through 5 of the Complaint are incorporated herein by reference and made a part hereof as if set forth in length.

7. This Honorable Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and independent jurisdiction pursuant to 28 U.S.C. § 1343.

8. Venue is proper pursuant to 28 U.S.C. § 1391 (b) because the events giving rise to this action took place in the Eastern District of Pennsylvania.

## IV. FACTUAL ALLEGATIONS

9. The allegations in paragraphs 1 through 8 of the Complaint are incorporated herein by reference and made a part hereof as if set forth in length.

10. Plaintiff is a single mother of four children who has worked for Defendant County since 2001.

11. Prior to her employment with the Northampton County's Solicitor Office, Plaintiff served as a part-time Assistant District Attorney for Northampton County between September 10, 2001 and February 26, 2007.

12. Pursuant to the Northampton County Home Rule Charter, Plaintiff was considered an "exempt" employee in her position as an Assistant District Attorney. See Northampton County Home Rule Charter (hereinafter "Home Rule Charter"), Article VIII, Section 802 (6). A true and correct copy of the Home Rule Charter marked **Exhibit "A"** is attached hereto and made a part hereof.

13. Section 803 of the Home Rule Charter provides that, "[a]ny individual who is appointed or promoted to a position in the career service on the basis of the merit personnel system shall retain that position within the career service and shall not be demoted, suspended, dismissed, or disciplined except for just cause." See Home Rule Charter, Article VIII, Section 803 (b).

14. By negative implication, Plaintiff could be dismissed without just cause while she worked in the District Attorney's office because she was an "exempt" employee.

15. On or about December 7, 2006, the Northampton County Council passed Resolution 80-06 which created, for the first time, a new, full-time Assistant County Solicitor position to be effective January 1, 2007. A true and correct copy of Resolution 80-06 marked **Exhibit "B"** is attached hereto and made a part hereof.

16. Importantly, Resolution 80-06 was silent as to whether the new Assistant County Solicitor position was to be classified as "exempt" or "career service."

17. On or about February 26, 2007 and after an interview, Plaintiff was offered this newly created position.

18. Unlike her previous employment status with the County, Plaintiff's new position as a full-time Assistant County Solicitor was considered "career service" according to the Home Rule Charter. This conclusion is supported by the following four observations:

   a. Most powerfully, the text of the Home Rule Charter expressly enumerated those positions that were considered to be "exempt." See Home Rule Charter, Article VIII, Section 802. In its entirety, Section 802 provides:

   > Each elected official, officer, and employee shall be a member of either the career or exempt service. The exempt service shall consist of:
   > (1) all elected officials;
   > (2) the heads of agencies immediately under the direction and supervision of the County Executive;
   > (3) one confidential or clerical employee for each of the above officials, except for members of the County Council;
   > (4) the Clerk of Council and the staff of the County Council;
   > (5) the members of authorities, boards, and commissions;
   > (6) permanent, part-time professional employees;
   > (7) provisional, probationary, and temporary employees;
   > (8) officers and employees required to be included in a state merit or civil service system; and
   > (9) officers and employees whose inclusion in the career service would be prohibited by the law of Pennsylvania. All other officers and employees shall be members of the career service.

   Plaintiff's position did not fall within any of the enumerations. Because the Home Rule Charter required every employee to be "a member of either the career or exempt service," Plaintiff was, by definition, a "career service" employee. See Home Rule Charter, Article VIII, Section 802;

   b. Plaintiff's acceptance of the position was contingent upon it being a "career service" position;

   c. Sometime after accepting the new position, Plaintiff's status as a "career

4

service" employee was confirmed in an email correspondence between Karl K. Longenbach, then County Solicitor, and Linda Markwith, Personnel Analyst. A true and correct copy of said correspondence marked **Exhibit "C"** is attached hereto and made a part hereof; and

    d.    Plaintiff was subject to the Career Service Regulations under the direction of Mr. Longenbach and Ms. Markwith.

19.    As a "career service" employee, Plaintiff could not be "dismissed" without just cause. See Home Rule Charter, Article VIII, Section 803 (b).

20.    Plaintiff served as a full-time Assistant County Solicitor with distinction and always received favorable reviews. Plaintiff has received letters of recommendation from, among others, a number of outside counsel and John Morganelli, Northampton County District Attorney.

21.    In her role as a full-time Assistant County Solicitor, Plaintiff independently investigated all County departments in order to assess their legal needs. The following contains a representative sample of Plaintiff's initiatives and efforts, which are largely without precedent in Northampton County:

    a.    Plaintiff initiated suit against an independent contractor for a design defect of the courthouse roof. This defect had existed for seven years and went unaddressed. Without Plaintiff's efforts, someone could have been seriously injured;

    b.    Plaintiff initiated the collection of Accounts Receivable for the County Nursing Home. In addition to her regular duties and after familiarizing herself with this area of law, Plaintiff collected over $120,000 and then determined that further assistance was essential. Plaintiff spent many hours investigating alternative methods of collection and ultimately

recommended the Kennedy Law Firm, a firm that was ultimately retained and has collected many hundreds of thousands of dollars to this day;

    c.    Plaintiff has saved Northampton County, by a conservative estimate, over $1,000,000 in Unemployment Compensation benefits. Plaintiff has done in excess of 200 hearings with a success rate of almost one hundred percent;

    d.    Plaintiff undertook all EEOC/PHRC matters. Plaintiff has litigated over 30 matters with a success rate of one hundred percent at the administrative level, thereby avoiding costly litigation;

    e.    Plaintiff successfully sued individuals who had collected Worker's Compensation Benefits/Medical Benefits under false pretenses;

    f.    Plaintiff helped to remedy the pervasive and dangerous asbestos problems in the County;

    g.    Plaintiff became the first Right-to-Know officer and responded to over two hundred requests;

    h.    In addition to all of the above, Plaintiff responded to questions from every row office, participated in contract review for various departments, and prepared contracts on a variety of subjects, such as Investment Management;

    i.    Plaintiff was always responsive to the needs of her fellow employees and various departments. In one instance, Plaintiff assumed the workload of a fellow employee who was suffering from health problems; and

    j.    Perhaps most significantly, Plaintiff devoted over three hundred hours, in addition to her regular duties, to finding a way to challenge a complicated and costly financial transaction contract.

22. In the November 2013 election, Defendant Brown, a Republican, defeated John Callahan, a Democrat, to become the new County Executive of Northampton County.

23. On or about January 6, 2014, Defendant Brown took the oath of office and officially became the County Executive of Northampton County.

24. As County Executive, Defendant Brown was granted broad executive and administrative powers under the Home Rule Charter, including:

    a. The power to "direct and supervise the agencies and personnel under him in accordance with this Charter," which includes the Office of the Solicitor. See Home Rule Charter, Article III, Section 302 (8); Article IX, Section 904;

    b. The power to "organize and reorganize the structure of the agencies under his direction and supervision," which includes the Office of the Solicitor. See Home Rule Charter, Article IX, Section 905;

    c. The power to "appoint the head of any agency immediately under his direction and supervision, who is a member of the exempt service," which includes the Solicitor. See Home Rule Charter, Article IX, Section 906 (a); and

    d. The power to "remove the head of any agency immediately under his direction and supervision, who is a member of the exempt service," which includes the Solicitor. See Home Rule Charter, Article IX, Section 906 (b).

25. At all times relevant hereto, Defendant Brown was acting pursuant to the policies and customs of Defendant County and in particular, inter alia, the Home Rule Charter.

26. Wielding these powers, Defendant Brown removed a member of the Democratic party from the position of County Solicitor and appointed Defendant Scomillio, a member of the Republican party and financial supporter of Defendant Brown.

27. On or about January 9, 2014, Defendant Scomillio was approved by the County Council and officially became the County Solicitor.

28. Pursuant to the Home Rule Charter, Defendant Scomillio became the head of the Office of the Solicitor. See Home Rule Charter, Article IX, Section 908 (a).

29. One of Defendant Scomillio's first orders of business was to reorganize the entire Office of the Solicitor. Of importance, it is not even clear that Defendant Scomillio could effectuate such a change, absent direction from Defendant Brown, as the Home Rule Charter expressly grants to the County Executive, and not the Solicitor, the power to "organize and reorganize the structure of the agencies under his direction and supervision," which includes the Office of the Solicitor. See Home Rule Charter, Article IX, Section 905. This alone raises some suspicion regarding the reorganization plan.

30. At the time that Defendant Scomillio took office, the Office of the Solicitor contained the following positions: a part-time Solicitor, two full-time Assistant Solicitors (of which Plaintiff was one), and five part-time Assistant Solicitors.

31. Under Defendant Scomillio's plan, the Office of the Solicitor would be reorganized as follows: a part-time Solicitor and seven part-time Assistant Solicitors (of which Plaintiff would not be a part—i.e. Plaintiff would be dismissed and not offered a chance to remain part-time).

32. Key to this case, Defendant Scomillio told Plaintiff, via telephone, on December 23, 2013 that he intended to reorganize the Solicitor's Office and that Plaintiff would be terminated effective January 7, 2014. On this date, a mere two days before Christmas, neither Defendant Brown nor Defendant Scomillio was employed by Defendant County. The timing and substance of this telephone call were most unfortunate as not only did the call dampen Plaintiff's

holiday season, but the indicated termination date also deprived Plaintiff of the opportunity to begin her search for new employment.

33. During that telephone conversation with Plaintiff and despite repeated inquiry, Defendant Scomillio failed to offer any reason for his decision to reorganize the office.

34. After Plaintiff informed Defendant Scomillio that she was a "career service" employee, and thus protected from dismissal absent just cause, he stated that she was a "career exempt" employee pursuant to Resolution 80-06. He gave no other reason for his desire to dismiss Plaintiff.

35. As previously noted, not only does Defendant Scomillio's statement misconstrue the express language of Resolution 80-06, which is silent as to whether Plaintiff's position as a full-time Assistant County Solicitor was of "exempt" or "career service" status, but it is also textually inaccurate and non-existent under the Home Rule Charter as that document simply does not recognize an employment status of "career exempt."

36. Subsequently, Defendant Scomillio's reorganization plan went into effect on January 27, 2014.

37. On that date, Plaintiff received correspondence from the Director of Human Resources of Northampton County informing Plaintiff both that the two full-time Assistant County Solicitor positions had been eliminated and that Plaintiff was being laid off. A true and correct copy of said correspondence marked **Exhibit "D"** is attached hereto and made a part hereof.

38. This correspondence contains two vital pieces of information, confirming that the reorganization plan was enacted under suspicious and illegal conditions:

      a.    The letter states that, "[t]hese positions were eliminated as a result of the Northampton County Solicitor's re-organization of the Solicitor's Office." Again, the Home Rule Charter expressly delegates such power to the County Executive, and not to the Solicitor; and

      b.    The letter states that, "[t]he full time assistant county solicitor positions were career exempt positions, rendering the Northampton County Career Service Regulations inapplicable." Again, the term "career exempt" is inaccurate and non-existent under the Home Rule Charter. Further and quite curiously, the letter provided the Plaintiff with notice that is only required to be provided to "career service" employees.

39.    As a result of Defendant Scomillio's reorganization plan, Plaintiff was not the only person who was laid off.

40.    In addition to Plaintiff, five other employees were laid off and the true impetus behind Defendant Scomillio's reorganization plan was revealed.

41.    Out of the six employees who were dismissed, five of them, including Plaintiff, are Democrats.

42.    Every single one of the newly appointed part-time Assistant County Solicitors is a Republican, the same political party as Defendant Brown and Defendant Scomillio. In fact, some of the new appointees were financial supporters of Defendant Brown.

43.    Plaintiff believes and therefore avers that a majority of the newly appointed part-time Assistant County Solicitors have no experience in County government.

44.    Plaintiff believes and therefore avers that Defendant Scomillio has assigned the newly appointed part-time Assistant County Solicitors to various practice areas, such as Employment Law and Worker's Compensation, in which they have no experience.

45. To date and despite repeated inquiry from Plaintiff, neither Defendant Brown nor Defendant Scomillio has provided a principled reason for the structural and personnel changes that fell upon the Office of the Solicitor. At one point, Defendant Scomillio stated that these changes were based upon a "metric" and "legacy costs." Plaintiff alleges that the reorganization of the Solicitor's Office was a pretext to oust the Democrats.

46. Read in light of the suspicious, and rather confused, reasons actually given for Plaintiff's dismissal, this omission speaks volumes: Defendants' reorganization was a political cleansing in its purest form.

## COUNT I
## VIOLATION OF THE FIRST AMENDMENT OF THE FEDERAL CONSTITUTION
## POLITICAL AFFILIATION DISCRIMINATION

47. The allegations in paragraphs 1 through 46 of the Complaint are incorporated herein by reference and made a part hereof as if set forth in length.

48. The First Amendment of the United States Constitution provides that, "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

49. Plaintiff's position as a full-time Assistant County Solicitor was not one that required political affiliation to effectively perform the duties of that position.

50. The position at issue is not a policy-making position: Plaintiff had no supervisory role, did not possess the authority to hire and fire others, did not possess any powers regarding budgetary matters, and could not speak on behalf of the Solicitor's Office.

51. Plaintiff's responsibilities were confined to the daily practice of law under the supervision of the Solicitor.

52. Plaintiff was, at all times material hereto, a registered Democrat. Plaintiff attended two fundraisers for John Callahan and made financial contributions to his campaign. A true and correct copy of one of Plaintiff's contributions marked **Exhibit "E"** is attached hereto and made a part hereof.

53. Defendants had knowledge of Plaintiff's political affiliation.

54. Plaintiff's political affiliation was causally connected to her dismissal.

55. Plaintiff believes and therefore avers that Defendant Scomillio has little, if any, experience in County government and has little, if any, experience in running a legal department.

56. Plaintiff believes and therefore avers that Defendant Scomillio never consulted any experienced County officials, including former Solicitor Longenbach, about the wisdom of his reorganization plan.

57. Plaintiff believes and therefore avers that Defendant Scomillio never consulted any experienced County employee, except David Backenstoe, about the wisdom of his reorganization plan. While Mr. Backenstoe, a Republican, is a highly regarded lawyer, his role within the Solicitor's Office was limited to specialized responsibilities.

58. Plaintiff believes and therefore avers that Defendant Scomillio never consulted any other Counties about the wisdom of his reorganization plan.

59. Indeed, Defendant Scomillio advised Plaintiff of her dismissal *before* both he and Defendant Brown had even entered office and *immediately* upon being notified by Defendant Brown on December 23, 2013 that he was going to be nominated for the position of County Solicitor.

60. To date, the only reason given for Plaintiff's dismissal was that she was a "career exempt" employee.

61. The acts of Defendant Brown and Defendant Scomillio implemented a municipal policy or custom.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment for compensatory damages, pre and post-judgment interest, costs of suit, and attorney's fees against Defendant County, Defendant Brown in his official capacity, and Defendant Scomillio in his official capacity, and enter judgment for punitive damages, compensatory damages, pre and post-judgment interest, costs of suit, and attorney's fees against Defendant Brown in his individual capacity and Defendant Scomillio in his individual capacity.

## COUNT II
## VIOLATION OF THE FOURTEENTH AMENDMENT OF THE FEDERAL CONSTITUTION
## PROCEDURAL DUE PROCESS

62. The allegations in paragraphs 1 through 61 of the Complaint are incorporated herein by reference and made a part hereof as if set forth in length.

63. The Fourteenth Amendment of the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

64. For the reasons set forth above, Plaintiff was a "career service" employee and thus subject to the "just cause" protections as found in the Home Rule Charter. See Home Rule Charter, Article VIII, Section 803 (b).

65. Plaintiff was not provided with a pretermination hearing of any kind.

66. The acts of Defendant Brown and Defendant Scomillio implemented a municipal policy or custom.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment for compensatory damages, pre and post-judgment interest, costs of suit, and attorney's fees

against Defendant County, Defendant Brown in his official capacity, and Defendant Scomillio in his official capacity, and enter judgment for punitive damages, compensatory damages, pre and post-judgment interest, costs of suit, and attorney's fees against Defendant Brown in his individual capacity and Defendant Scomillio in his individual capacity.

### COUNT III
### VIOLATION OF THE FOURTEENTH AMENDMENT OF THE FEDERAL CONSTITUTION
### EQUAL PROTECTION

67. The allegations in paragraphs 1 through 66 of the Complaint are incorporated herein by reference and made a part hereof as if set forth in length.

68. The Fourteenth Amendment of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

69. As previously highlighted, Defendant Scomillio and Defendant Brown singled out Democrats, including Plaintiff, to bear the burden of their reorganization plan.

70. Plaintiff alleges that she was singled out because she was a member of the Democratic Party, i.e. she was a member of a class not politically affiliated with Defendant Brown and Defendant Scomillio.

71. Based on this single trait, Plaintiff was dismissed from her position as a full-time Assistant County Solicitor.

72. Out of six employees who were terminated from the Solicitor's Office, five of the six are Democrats. All of the six newcomers to the Office are Republicans. Defendant Brown and Defendant Scomillio are Republicans.

73. Defendant Brown and Defendant Scomillio have put forth no detailed explanation for the structural and personnel changes in the Solicitor's office. The only explanation given for

the systemic changes in the Solicitor's Office was that it was based upon a "metric" and "legacy costs." The only explanation given for Plaintiff's dismissal was that she was a "career exempt" employee, a status at odds with the plain text of the Home Rule Charter.

74. The acts of Defendant Brown and Defendant Scomillio implemented a municipal policy or custom.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment for compensatory damages, pre and post-judgment interest, costs of suit, and attorney's fees against Defendant County, Defendant Brown in his official capacity, and Defendant Scomillio in his official capacity, and enter judgment for punitive damages, compensatory damages, pre and post-judgment interest, costs of suit, and attorney's fees against Defendant Brown in his individual capacity and Defendant Scomillio in his individual capacity.

Respectfully submitted,

GROSS McGINLEY, LLP

By: _____
PATRICK J. REILLY, ESQUIRE
ID No: 32235
BRETT M. WALDRON, ESQUIRE
ID No: 316773
Attorneys for Plaintiff

33 South 7th Street, PO Box 4060
Allentown, PA 18105-4060
Phone: (610) 820-5450
Fax: (610) 820-6006

Date: 2/14/14