IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JILL E. MANCINI : CIVIL ACTION
:
v. : No. 14-963
:
NORTHAMPTON COUNTY, et al. :

# MEMORANDUM

**Juan R. Sánchez, J.** June 26th, 2015

Plaintiff Jill E. Mancini brought suit against Northampton County, County Executive John Brown, and County Solicitor Victor Scomillio, alleging violations of the First Amendment, Due Process Clause, and Equal Protection Clause in connection with her termination from her position as a full-time Assistant County Solicitor for Northampton County. After a five-day trial, the jury returned a verdict finding Mancini was a career service employee, her position did not require political affiliation, and Northampton County violated Mancini's due process rights. The jury awarded her $94,232.00 in actual damages.[1]

In its post-verdict motion, Defendant Northampton County contends it is entitled to judgment as a matter of law or a new trial pursuant to Federal Rule of Civil Procedure 50. The County first argues Mancini is not entitled to due process as a matter of law because the Solicitor's Office was reorganized based on legitimate, nondiscriminatory factors, and second, the plain language of the County's policies do not require due process during reorganizations. The County also argues Mancini was a policymaker as a matter of law; thus, she was not career service and could be terminated at-will. Alternatively, Northampton County argues insufficient

---

[1] The jury found in favor of Defendants Brown or Scomillio on the Due Process claim and in favor of all Defendants on the First Amendment claim. As the Court granted Defendants' Rule 50 Motion for Judgment as a Matter of Law on Mancini's Equal Protection claim, that claim did not go to the jury.

evidence supports the jury verdict in favor of Mancini on her Due Process claim. Because there were genuine issues of material fact regarding Mancini's status as a career service employee, whether her position required political affiliation, as well as the legitimacy of Northampton County's reorganization, and because the jury's findings were not against the weight of the evidence, Northampton County's motion will be denied.

Mancini also moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a). Mancini asserts the Court erred in permitting Defendants to introduce evidence about the 2015 budget of the Solicitor's Office in support of their defenses to her First Amendment claim. Mancini also alleges the Court erred in finding Defendants Brown and Scomillio were entitled to qualified immunity on her First Amendment claims as asserted against them in their individual capacities. For the reasons set forth below, Mancini's motion for a new trial will also be denied.

**LEGAL STANDARDS**

A court may grant judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Such a motion should be granted only if, "viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Macleary v. Hines*, 817 F.2d 1081, 1083 (3d Cir. 1987). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In conducting this review, a court may not make credibility determinations, weigh the evidence, or draw its own inferences as those actions "are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000) (citation omitted).

"Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id*.

Federal Rule of Civil Procedure 59(a) allows the court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The authority to grant a new trial "resides in the exercise of sound discretion by the trial court." *Wagner by Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir. 1995). Generally, a district court should grant a new trial "only where a miscarriage of justice would result if the verdict were to stand." *Levy v. Schmidt*, 573 F. App'x 98, 105 (3d Cir. 2014) (quoting *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991)). In determining whether a new trial is necessary the court must "not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *Id*.

**DISCUSSION**

The jury found Mancini had a property interest in her position as a career service employee and that Northampton County violated her due process rights by not providing her with a meaningful pre-termination opportunity to respond to the elimination of her position. *See* Official Verdict Slip 1, ECF No. 59. Nonetheless, Northampton County contends it is entitled to judgment as a matter of law because as Mancini was eliminated due to a legitimate reorganization, she lacked a property interest in her position, and further, County policies do not call for due process during reorganizations. Northampton County also contends it is entitled to judgment as a matter of law because an Assistant Solicitor is a policymaker and cannot be a career service employee due process prior to termination. In the alternative, Northampton County contends insufficient evidence supports the jury's findings that Mancini had a property interest and did not receive meaningful process prior to termination.

When a plaintiff has a cognizable property interest, she is entitled to notice and the opportunity to be heard before deprivation of that interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Whether a plaintiff has a cognizable property interest is decided "by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344 (1976). If a state law creates a property interest, a person cannot be deprived of that interest other than in accordance with the federal standards of due process. *See Loudermill*, 470 U.S. at 541.

Northampton County contends that because it reorganized the Solicitor's Office based on legitimate factors, Mancini does not have a protected property interest as a matter of law. Some courts have recognized this "reorganization exception": the government's right to reorganize without providing laid-off employees due process. *See Baker v. Borough of Port Royal, PA*, No. 06-0932, 2007 WL 1576439, at *6 (M.D. Pa. May 30, 2007). *But see Alequine v. Baker*, No. 11-00008, 2011 WL 1366344, at *2 (D. Del. Apr. 11, 2011) ("The Third Circuit has not adopted the reorganization exception."). These same courts recognize the reorganization principle is not absolute and may be challenged as pretextual.[2] *See Baker*, 2007 WL 1576439, at *6; *Alequine*, 2011 WL 1366344, at *2 (denying the defendants' motion to dismiss because the plaintiff's allegations that the defendants implemented the reorganization for political reasons, arbitrarily

---

[2] Other cases Northampton County cites are inapposite since their holdings do not rest on the application of a reorganization principle. For instance, *Kusza v. Maximonis* involved policemen who claimed they were illegally furloughed in violation of a state statute. 70 A.2d 329 (Pa. 1950). The defendant-borough moved for dismissal because the policemen had not followed the process the statute set forth for employees challenging their suspensions, removals, or reductions in rank. Reversing, the Pennsylvania Supreme Court held that the statute had "no provision . . . for a hearing . . . in cases of furloughed employees," and thus, the policemen could proceed directly to court for reinstatement. *Id*. at 331. Similarly, *In re Appeal from Ordinance #382 of the Borough of Dale*, 382 A.2d 145, 147-48 (Pa. Commw. Ct. 1978), is also inapposite. In that case, the court held a municipality's abolishment of the police department did not run afoul of the Police Tenure Act, which provides grounds upon which a police officer may be suspended, reduced in rank, or removed during a reduction in force or for other reasons, because the Act presupposed the continued existence of the department.

demoted officers, and saved a minimal amount of money, were sufficient to raise a genuine dispute as to whether the reorganization was pretextual); *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 25 (1st Cir. 2005) (holding the plaintiff had a right to due process even though his layoff was allegedly based on reorganization when the record indicated performance-based factors were considered in selecting him for layoff); *Misek v. City of Chicago*, 783 F.2d 98, 101 (7th Cir. 1986) (holding the district court erroneously assumed the plaintiffs were not entitled to due process when the plaintiffs consistently asserted the so-called reorganization was purely pretextual and an effort to replace them with others favored by the agency's director); *Kavakich v. Bentleyville Borough*, No. 06-1114, 2008 WL 2563377, at *4 (W.D. Pa. June 24, 2008) (recognizing that in order to overcome the presumption that a defendant acted in good faith, a plaintiff could present evidence showing that the reorganization was designed to evade a court order or showing the job was substantially recreated, even under a different name or title); *Twp. of Perkiomen v. Mest*, 522 A.2d 516, 519-20 (Pa. 1987) (same); *Carey v. City of Altoona,* 16 A.2d 1, 2 (Pa. 1940) (refusing to "pry into the motives of legislators" absent suggestion of subterfuge when the abolished position was not recreated in name or substance); *Ferguson v. City of Philadelphia*, 86 Pa. D. & C. 87, 91 (C. P. Phila. Cnty. 1951) (holding the plaintiff was entitled to reinstatement when after abolishing his position, the defendants created a new position with an almost identical name and identical salary, even though there was otherwise no evidence of pretext). In other words, if a plaintiff can demonstrate that a reorganization is prextexual, she may only be terminated with full due process.

Mancini produced evidence creating a genuine issue of material fact as to whether the reorganization was legitimate. For instance, at the summary judgment stage, she produced evidence that Scomillio, then incoming-County Solicitor, made the decision to reorganize the

Solicitor's Office within several weeks of John Brown's election as County Executive. *See* Pl.'s Opp. to Defs.' Mot. for Summ. J. Ex. G, at 121, 123, 126 (May 13, 2014, testimony of Scomillio under oath to the Northampton County Personnel Appeals Board). Scomillio made his decision based on "know[ing] who was on the staff there," even though he was not yet familiar with the scope and extent of work in the Solicitor's Office. *See id*. Ex. G. Yet he indicated he "had no interest in keeping [Mancini] on the staff[] based upon her reaction to [his] suggestion of reorganization." *See id.* Ex. G, at 135. Mancini also produced evidence indicating despite Brown's announced intention to reduce costs across the County after his November 2013 election, he continued to spend money by entering into new contracts with outside vendors. For instance, Brown hired Sahl Communications in July 2014, despite not knowing if anyone at the County was responsible for doing the work for which Sahl was hired. *See id.* Ex. K, at 61. He also hired Deana Zosky, a financial consultant, despite campaigning on the strength of his business background. *See id.* Ex. K, at 65. Brown further created a new job, "Deputy Director of Public Works," for Steve DeSalva. *See id.* Ex. K, at 67. DeSalva was previously the Director of Public Works in the prior County administration. *Id*. And while Brown believed the elimination of the full-time Assistant Solicitor positions saved the County money, he could not specify how much. *See id*. at 60. Finally, Mancini produced evidence indicating the eliminated positions were substantially recreated as part-time positions with largely similar responsibilities. *See e.g.*, Trial Tr. 194, 204-06, Jan. 14, 2015 [hereinafter Trial Day 3 Tr.].

The evidence at trial similarly was sufficient to submit the question of whether Defendants' reorganization was pretextual to the jury.[3] Patricia Siemiontkowski, the County's

---

[3] The jury was not directed to make a specific finding on whether Defendants' proffered reorganization was legitimate or pretextual. *See* Official Verdict Slip 1, ECF No. 59. It found, however, that Northampton County violated Mancini's Due Process rights by not providing her

6

Human Resources Director, testified that she was not asked to conduct a desk audit or provide any information about the efficiency of the Solicitor's Office prior to meeting with Scomillio regarding its reorganization in December 2013. *See* Trial Day 5 Tr. 53-54. Brown testified that he was unfamiliar with the Office's budget before he asking Scomillio to consider reorganization. *See* Trial Day 3 Tr. 234. He did not personally evaluate the efficiency of the full-time Assistant County Solicitors after the election. *See id.* at 254. He also did not ask for any independent calculation of the savings that would be realized in eliminating those positions, although he received some unidentified paperwork from HR, before deciding to reorganize the Office. *See* Trial Day 3 Tr. 268; *see also* Trial Day 5 Tr. 82. Again, Brown testified that under his leadership, the County entered into contracts with outside vendors to provide communications and financial consulting services at $76,500 and $715,000 over four years, respectively, despite his campaign pledge to cut spending. *See* Trial Day 4 Tr. 273-76, Trial Day 5 Tr. 102-04. Scomillio testified he did not look to other similar counties when determining whether Northampton County could run efficiently with part- versus full-time Assistant Solicitors, *see* Trial Day 4 Tr. 32-33, nor did he conduct a desk audit to determine the Solicitor's Office's volume of work, *see id.* at 34. Markwith testified to the same effect. *See* Trial Day 3 Tr. 191. Finally, Mancini solicited testimony indicating the eliminated positions were substantially

---

with meaningful pre-termination process. *See id.* While the jury ultimately found in Defendants' favor on Mancini's First Amendment claim, *see id.* at 2, that finding does not mean Defendants' alleged reorganization was legitimate such that Mancini lacked a property interest in her position. First, the jury could have adduced Defendants lacked knowledge about Mancini's political affiliation, as Scomillio testified he was unaware of the political affiliation of the newly hired Assistant Solicitors, *see, e.g.,* Trial Tr. 40, Jan. 15, 2015 [hereinafter Trial Day 4 Tr.], and Brown testified he did not consider political affiliation when hiring generally, *see, e.g.*, Trial Tr. 80, Jan. 16, 2015 [hereinafter Trial Day 5 Tr.]. Additionally, notwithstanding what the jury found in regards to Mancini's First Amendment claim, Defendants could have—and did not— requested an instruction on her property interest in light of a purported reorganization or an interrogatory asking the jury to determine if Mancini had a property interest. *See* Fed. R. Civ. P. 51(c)(1); *see also* Joint Points for Charge, ECF No. 49, at 2.

recreated as part-time positions with the similar job responsibilities. *See e.g.*, Trial Day 3 Tr. 194, 204-06; Trial Day 5 Tr. 82, 84, 139-40; Trial Ex. 24; Trial Ex. 25.

Because Mancini showed there was a genuine issue of material fact as to whether Defendants' reorganization "was a sham," *Misek*, 783 F.2d at 101, and then presented sufficient evidence for the question to be submitted to the jury, Defendants are not entitled to judgment as a matter of law on Mancini's due process claim in reliance on the reorganization principle.

The Court will also deny Northampton County's request for judgment as a matter of law on the basis that the plain language of Northampton County's policies and regulations do not provide for due process when positions are eliminated due to reorganization. As Northampton County indicates, the Employee Policies Manual does note "the County may need to institute a Reduction in Force (RIF, Layoff) due to economy, efficiency, restructuring, reorganization, or other related reasons." Trial Ex. 7, Section 3.525, at 1. Northampton County also asserts "the policy is entirely devoid of any reference to an employee's right to be heard via due process procedural rights as a result of a layoff." Defs.'s Post-Verdict Mot. 12. To the contrary: as Mancini notes, the policy expressly allows an employee to appeal her layoff within thirty days after receiving notice on the basis that the RIF policy and/or Career Service Regulations were not followed, or that the decision to select the particular "layoff unit"—that is position(s), division, or department(s) for layoff—was "arbitrary, capricious, or a violation of law." Trial Ex. 7, Section 3.525, at 4.

Finally, the Court will deny Northampton County's motion for judgment as a matter of law on the County's renewed argument that the Court should have determined Mancini was a policymaker not entitled to due process as a matter of law. Political affiliation is an acceptable requirement for government employment if an employee's private political beliefs would

interfere with her discharge of her public duties. *See Branti v. Finkel*, 445 U.S. 507, 517 (1980); *see also Galli v. N.J. Meadowlands Cmm'n*, 490 F.3d 265, 271 (3d Cir. 2007) ("[E]mployers are allowed to make employment decisions based on political affiliation when 'policymaking' positions are at issue."). However, "no clear line can be drawn between policymaking and nonpolicymaking positions." *Elrod v. Burns*, 427 U.S. 347, 367 (1976). "The determination of status as a policymaker vel non presents a difficult factual question." *Rosenthal v. Rizzo*, 555 F.2d 390, 393 n.5 (3d Cir. 1977). A person's status as a policymaker *may* be determined as a matter of law. *See Ness v. Marshall*, 660 F.2d 517, 522 (3d Cir. 1981). But "where there is evidence to support the employee's claim that [s]he does not make policy . . . [s]he is entitled to a full trial on the issue." *Rosenthal*, 555 F.2d at 393 n.5. Northampton County asserts *Ness* stands for the proposition that all assistant city solicitors are policymakers as a matter of law. This Court disagrees. The *Ness* court noted the administrative code of the municipality in that case specified that the city solicitor and any assistants would be appointed by the mayor with the advice and consent of the council and would serve at the pleasure of the mayor. *See* 660 F.2d at 521, 522-23 (concluding "inasmuch as party affiliation is, as a matter of law, an appropriate . . . requirement for the effective performance of the city solicitors *of the City of York*, the district court correctly granted summary judgment for defendants." (emphasis added)). There is no analogous language in the Northampton County Home Rule Charter or any of the regulations or policies in the record. This case is like *Rosenthal*, in which the Third Circuit determined that because evidence as to the nature of that plaintiff's duties was inconsistent, it was inappropriate for the district court to weigh the evidence and resolve the issue of whether he was a policymaker on summary judgment. *See* 555 F.2d at 392-93. Likewise, it would have been inappropriate for this Court to decide the factual issue and grant summary judgment in favor of

Defendants when the parties disagreed and continued to present conflicting information during trial about Mancini's potential status as a career service employee and her job duties as an Assistant County Solicitor. Finally, as for Northampton County's contention that *Ness* forecloses Mancini's claim that she—or any Assistant County Solicitor—could be career service, the Court simply sees no basis in the case supporting such a broad assertion.[4]

Northampton County also contends that the evidence was insufficient to support the jury verdict in favor of Mancini on the due process claim. The Court disagrees. Sufficient evidence supports the jury's findings that Mancini had a property interest as a career service employee and did not receive meaningful due process. As to the first determination—her property interest as career service employee—the jury heard testimony from Mancini that she understood her position was a career service position. *See* Trial Tr. 13, 16-17, 48, Jan. 13, 2015 [hereinafter Trial. Day 2 Tr.]. Karl Longenbach, County Solicitor at the time Mancini's position was created, testified that he intended for the full-time Assistant Solicitor position to be career service. *See* Trial Day 2 Tr. 232-33; Trial Day 3 Tr. 55. Additionally, the jury was presented with Northampton County Home Rule Charter Article 8, which establishes all County positions fall into one of two categories: career service or exempt service. *See* Trial Ex. 1. The jury heard testimony that Mancini's position was career service because the Charter specifies each

---

[4] Northampton County argued at trial, as well as in its post-verdict motion, that *Naef v. City of Allentown*, 227 A.2d 888, 889 (Pa. 1967), also forecloses Mancini's argument. The court in *Naef* held that the city solicitor and assistant solicitors could be removed from office by the city council without cause any time prior to the expiration of their terms. *Id*. In reaching that holding, however, the court determined their appointment and removal was governed by the Third Class City Code, 53 Pa. Con. Stat. § 35101, et seq., which is inapplicable to a home rule municipality such as Northampton County. *See Wecht v. Roddey*, 815 A.2d 1146, 1152 (noting the "adoption of a home rule charter acts to remove a municipality," in *Wecht*'s case, the County of Allegheny, "from the operation of the code provisions enumerating the powers of that particular class of municipality"). *Naef*'s commentary about the solicitor sitting as "an important confidant," i.e. a policymaker, is no more than dicta, as the holding of the case rests on the interpretation of the Third Class City Code. *See id*. at 890-91.

employee of the County shall be either a member of the career or exempt service, Mancini's position did not fit into any of the enumerated exempt service positions, and the Charter expressly notes all positions not enumerated are career service positions. *See* Trial Ex. 1; *see also* Trial Day 2 Tr. 188-193, 231.

The jury also heard testimony about email exchanges between Linda Markwith, a Human Resources Generalist and Personnel Analyst, and Longenbach, which support the jury finding that Mancini was a career service employee. For instance, when creating the description for the full-time Assistant Solicitor position, Longenbach asked Markwith to describe the position as career service. Trial Day 2 Tr. 237; Trial Ex. 10. Both Longenbach and Markwith testified that Markwith did not respond that the position was not career service. *See id.*; *see also* Trial Day 3 Tr. 160. Indeed, the jury heard subsequently Markwith told Longenbach, "full-time [Assistant County Solicitor] positions fall under the career service category of positions," and "[t]herefore, Jill Mancini's position will be included in the career service category and she will accrue vacation/personal/sick time as appropriate." Trial Day 2 Tr. 241; Trial Day 3 Tr. 170-72; Trial Ex. 12. In response, Longenbach wrote, "Linda, I agree that your email correctly characterizes the full-time Assistant Solicitor position as a career service rather than exempt position." *See* Trial Day 3 Tr. 173. Markwith testified she did not correct Longenbach's statements. *See id.* Markwith also testified she believed the full-time Assistant County Solicitor position created in 2006 was a career service position according to the Charter, and a career service employee could only be terminated for cause. *See* Trial Day 3 Tr. 139-40, 149. She noted that when she attempted to list full-time Assistant County Solicitors in an internal information system as exempt service, she was denied approval by Patricia Siemiontkowski because the administrative code and Home Rule Charter did not designate full-time professional employees as exempt. Trial

Day 3 Tr. 182-83. Finally, Markwith testified that in her experience, full-time professional employees were not made to take an open competition examination prior to appointment, so the way Mancini was appointed was not unusual. *See id*. at 142, 149-151.[5] The jury had a sufficient evidentiary basis for its finding that Mancini had a property interest in her position as a career service employee.

Sufficient evidence also supports the jury's finding that Mancini did not receive the process she was due as a career service employee. The Home Rule Charter provides "[a]ny individual who is appointed or promoted to a position in the career service on the basis of the merit personnel system shall retain that position within the career service and shall not be demoted, suspended, dismissed, or disciplined except for just cause." Trial Ex. 1, Art. VIII, Section 803(b). The Northampton County Employee Policy Manual gives career service employees the right to grieve based on, "(1) an alleged violation of the County's Home Rule Charter, Administrative Code, Career Service Regulation, County policy, or department procedure relating to terms and conditions of employment of the grievant, or (2) an appeal of a suspension or discharge from employment." Trial Ex. 6, Section 3.15, at 1. The Manual further specifies the Personnel Appeals Board shall hear appeals "[b]y any member of the Career Service from any decision resulting in . . . dismissal." *Id*. at 3. And as discussed above, the Manual provides that even when the County needs to institute a reorganization resulting in layoffs, a laid-off employee may appeal within thirty days after receiving notice on the basis that the RIF policy and/or Career Service Regulations were not followed, or that the decision to select

---

[5] Despite originally maintaining she believe Mancini was a career service employee, immediately prior to Mancini's termination, Markwith disclaimed her original belief, telling Mancini she believed the County treated the position as exempt when filling it, *see* Trial Day 2 Tr. 70.

her particular layoff unit was "arbitrary, capricious, or a violation of law." Trial Ex. 7, Section 3.525, at 4.

The process specified by the Home Rule Charter and Employee Policies Manual, including Section 3.525, are in accordance with the "root requirement" of due process "that an individual be given the opportunity for a hearing *before* [s]he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (emphasis in original) (holding that the pre-termination hearing must at minimum present notice of the charges against the employee, an explanation of the evidence, and an opportunity for the employee to present her side). Only in "extraordinary situations" where some government interest is at stake is it permissible to postpone the hearing until after the deprivation. *See Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (citation omitted). That hearing must be "granted at a meaningful time and in a meaningful manner." *Bilinski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976)).

Even if this were an extraordinary circumstance, sufficient evidence in the record supports the jury finding that Mancini did not receive the meaningful process she was entitled to. Mancini was terminated by letter on January 27, 2014. *See* Trial Ex. 28. As she testified, Northampton County did not schedule a grievance hearing until February 19, 2014, several weeks later. Trial Day 2 Tr. 85. Mancini was denied the opportunity to have counsel present at that hearing, even though Northampton County was represented by Assistant Solicitor Maura McGuire. *See id.* at 86. Moreover, the hearing officer was not apprised of the true nature of Mancini's grievance and assumed it was gender-based. *See id.* at 187. Subsequent to her grievance being denied, Mancini filed two counseled appeals in May and June 2014. As of the first day of trial, January 12, 2015, Mancini had not yet received a final decision from the

13

Personnel Appeals Board, which notified her by letter of November 19, 2014, that the Board was "hopelessly deadlocked." *See id*. at 89; *see also* Trial Ex. 32. Northampton County claims it made process available to Mancini, but she voluntarily refused to avail herself of it. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself them." (citation omitted)). For example, defense witnesses testified that Mancini was aware of two public meetings where she could have aired her concerns: a January 22, 2014, personnel committee meeting, and a January 23, 2014, meeting during which the Northampton County Council adopted the resolution eliminating her position. *See* Trial Day 4 Tr. 290-92; Trial Day 5 Tr. 148-151. Additionally, she was given the opportunity to address her concerns via memorandum to Scomillio. Despite hearing testimony about these opportunities, the jury nonetheless found Mancini received inadequate process. The parties agreed it was up to the jury to determine what constituted meaningful process,[6] and the Court will not now reject the jury's finding in light of the sufficient evidence to sustain it.

Finally, there is sufficient evidence in the record to sustain the jury's finding that Mancini was not a policymaker whose position required political affiliation. Mancini presented evidence that the Home Rule Charter prevented discrimination based on political affiliation with respect to career service positions. *See* Trial Ex. 1, Section 807, at 40 ("No individual shall be favored or disfavored with respect to any position or office because of . . . political opinions or affiliations . . . ."). The jury heard testimony from Mancini and Longenbach, a former County Solicitor, that the duties of her position as an Assistant Solicitor did not require political affiliation. *See* Trial

---

[6] While in deliberations, the jury asked the Court to define what constitutes a "meaningful pre-termination opportunity to respond to the elimination of her position." Trial Day 5 Tr. 275. Because the parties agreed such a determination was entirely for the jury, the Court indicated to the jury that it could not provide further guidance.

Day 2 Tr. 198, 232. Dan Spengler, the County Solicitor prior to Scomillio and a former Assistant County Solicitor, also testified political affiliation was not a requirement of the position. *See* Trial Day 4 Tr. 98 (testifying Mancini did not have the authority to hire or fire, prepare any budgets, power over anyone in the County, or speak publically on behalf of the County). David Backenstoe, an Assistant County Solicitor, testified political affiliation was not a "factor in [his] employment," and he had served both Democrat and Republican County Executives. *Id.* at 187. Finally, the jury was instructed to consider the factors set forth in *Galli v. N.J. Meadowlands Cmm'n* in order to determine whether political affiliation was an essential component of the Assistant County Solicitor position and found it was not. *See* 490 F.3d at 271; Trial Day 5 Tr. 252. Because the jury's verdict was sufficiently supported by evidence, the Court will not disturb it.

Mancini argues the Court erred by permitting Defendants to introduce the 2015 budget for the Northampton County Solicitor's Office and should grant a new trial on her First Amendment claim as a result. "Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground[s] for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61; *see also Becker v. ARCO Chem. Co.*, 207 F.3d 176, 180 (3d Cir. 2000) ("[A] finding of reversible error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected." (internal citation and quotation marks omitted)). "Evidence is relevant if . . . it has any tendency to make a fact more or less probable . . . ." Fed. R. Evid. 401. Even when evidence is relevant, however, it may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

Evidence confirming or rebutting an employer's proffered motive is relevant in a discrimination action. *See, e.g.*, *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 522 (3d Cir. 2003) (holding evidence of an employer's conduct towards other employees is relevant to show the employer's proffered justification was pretextual in an ADEA action); *Glass v. Philadelphia Elec. Co.*, 34 F.3d 188, 193-94 (3d Cir. 1994) (holding the district court committed reversible error by excluding evidence concerning an allegedly racially hostile work environment in an ADEA case because it deprived the plaintiff of a full hearing on the issue of pretext). The two pages of the 2015 budget for Northampton County admitted into evidence covered the Solicitor's Office's budget. The budget is evidence that reduced expenditures—the rationale Defendants offered for eliminating Mancini's position—were realized.[7] Accordingly, it was relevant to Defendants' defense that Mancini's termination was due to economic factors rather than pretext for political affiliation discrimination. Alternatively, the evidence was relevant to rebut Mancini's usage of post-termination spending decisions made by Defendants to show pretext.

The admission of this evidence did not so prejudice Mancini such that her substantial rights were affected. The evidence was from a directly relevant time period, reflecting the financial status and operation of the Solicitor's Office the year after Mancini's position was eliminated. Contrary to Mancini's assertion that the evidence only serves to mislead or confuse the jury into conflating budgetary results with the legitimacy of Defendants' proffered reason

---

[7] Mancini alleges the budget lacks a temporal nexus with the elimination of her position by noting Defendants made the decision to terminate her in 2013 and the proffered budget covers 2015. Although the evidence does show Defendants made the decision to eliminate Mancini's position in December 2013, the position was eliminated effective February 17, 2014, and the budget at issue was adopted December 31, 2014. Thus, it concerns the fiscal year immediately following that in which Mancini's position was eliminated.

two years earlier, it directly rebuts Mancini's claim that saving money was *not* the reason her position was eliminated.

Mancini also alleges the Court erred in granting summary judgment in favor of Defendants Brown and Scomillio in their individual capacities on her First Amendment claim by finding that they were entitled to qualified immunity. Such immunity shields government officials from "civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether officials are entitled to qualified immunity, a court must determine whether the facts a plaintiff has alleged or shown make out a violation of a constitutional right and whether that right at issue was clearly established at the time of the defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A court exercises its discretion in deciding which of the two prongs to address first. *See id.* at 236. In determining whether a right was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *In re City of Philadelphia Litig.*, 49 F.3d 945, 961 (3d Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the action was lawful; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id*. (alterations omitted) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, "qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

Mancini asserts Defendants' conduct contravened clearly established law. Even though they were aware "legal issues likely precluded the elimination" of the position, they nonetheless intentionally and negligently rushed to terminate her illegally.[8] Pl.'s Post-Verdict Mot. 10. However, under applicable law, it was not clearly established Brown and Scomillio were prohibited from eliminating Mancini's position. They could have reasonably concluded, in reliance on *Ness v. Marshall*, that Northampton County's full-time Assistant County Solicitors were policymakers. As such, they could have believed that Mancini could be terminated based on her political affiliation without contravening the First Amendment. *See Branti*, 445 U.S. at 517 ("[I]f an employee's private political beliefs would interfere with the discharge of [her] public duties, [her] First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency."); *Galli*, 490 F.3d at 271 ("[T]ermination of public employees because of their political affiliation violates the First Amendment unless the position at issue involves policymaking."). That Scomillio wrote Brown a memorandum flagging issues for Brown's review prior to the elimination of Mancini's position evinces due diligence rather than conduct contrary to clearly established law.

An appropriate order follows.

---

[8] In support of this argument, Mancini points to the November 2013 memorandum Scomillio, then in private practice and under consideration for the County Solicitor position, wrote to Brown, then the incoming County Executive, indicating: (1) the career service designation could entitle an employee to certain process before discharge or termination; (2) United States Supreme Court cases and Pennsylvania Appellate Court cases prohibit the removal of public defenders for political purposes; (3) removal of part-time or full-time professionals would likely result in a claim of political retaliation; and (4) removal could raise "an issue" of procedural and substantive due process and require research to determine whether notice and opportunity is required when a position is "omitted." Trial Ex. 23; *see also* Trial Day 3 Tr. 240, 244-45, 247, 298-99; Trial Day 4 Tr. 4-9.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.